AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: _____ 8/3/26

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

FILED

AUG 0 3 2026

JOAN KANE, CLERK
U.S. DIST. COURT
BY _____ WESTERN DIST. OKLA.
_____, DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*
(1) A WHITE iPHONE WITH A CRACKED SCREEN IN A BLUE CASE; (2) A BLUE ANDROID WITH "AT&T" MARKED ON THE BACK; (3) A BLACK iPHONE WITH A BLACK CASE; (4) A BLACK ANDROID; (5) A BLUE AND BLACK MOTOROLA RAZR; AND (6) A BLUE ANDROID WITH IMEI: 990017699213423

)
)
)
)
)
)
)
)

Case No. MJ-26- 390 -SM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribution Controlled Substances |
| 21 U.S.C. § 856(a)(1) | Maintaining a Drug-Involved Premises |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Dakota Norton, Special Agent DEA
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Aug 3, 2026

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

SUZANNE MITCHELL, U.S. MAGISTRATE JUDGE
_____
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF (1) A WHITE iPHONE WITH A CRACKED SCREEN IN A BLUE CASE; (2) A BLUE ANDROID WITH "AT&T" MARKED ON THE BACK; (3) A BLACK iPHONE WITH A BLACK CASE; (4) A BLACK ANDROID; (5) A BLUE AND BLACK MOTOROLA RAZR; AND (6) A BLUE ANDROID WITH IMEI: 990017699213423 | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Dakota Norton, Special Agent with the Drug Enforcement Administration, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, specifically, the electronic devices identified below and in **Attachment A**, which are currently in law enforcement possession, and the extraction from those devices of electronically stored information described in **Attachment B**, which constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1), 846, and 856(a)(1).

2.    I am a federal law enforcement officer as defined under Federal Rule of Criminal Procedure 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant.

3.    I am a Special Agent with the Drug Enforcement Administration (DEA), currently assigned to the Oklahoma City, Oklahoma District Office. As such, I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered of the United States authorized to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

4.    I have been employed by the Drug Enforcement Administration (DEA) since January 2024 and have been assigned to the DEA Oklahoma City District Office, Dallas Division, as a Special Agent (SA) since August 2024. Prior to working for the DEA, I was employed by Immigration and Customs Enforcement (ICE) as a Deportation Officer from September 2019 until January 2024. I was assigned to the Salt Lake City, Utah DEA Office as a Task Force Officer from February 2022 to January 2024. I also worked as a Border Patrol Agent from April 2018 to September 2019, assigned to the Sonoita Border Patrol Station. During my career in law enforcement, I have conducted numerous criminal investigations concerning violations of the Controlled Substances Act and

2

have received ongoing training in conducting such investigations.

5. As part of my duties as a Special Agent, I investigate criminal violations relating to trafficking in illegal narcotics. As a result of my training and experience, including information provided by other federal agents with applicable knowledge, I am familiar with the tactics, methods, and techniques used by drug traffickers. I have participated in the execution of multiple federal search warrants targeting various types of evidence and property. In light of my training and experience, I know the following:

a. I am aware that drug couriers, and people associated with drug trafficking organizations (DTOs), often use electronic devices, including computers, tablets, cellular phones, and other electronic storage devices, to communicate and execute electronic transactions which can, in turn, create automatic records and documentation of the transactions;

b. I am aware that it is particularly common for individuals engaged in the sale and distribution of illegal drugs to use electronic devices to track and document financial transactions;

c. I am aware that individuals engaged in drug trafficking will often maintain more than one cell phone or electronic device, and that they will frequently keep contact information and other evidence of their financial dealings with DTOs on cellular phones,

3

computers, tablets, and other storage devices and that they often keep such electronic devices on or near their person.

d.    I am aware that drug traffickers use their cellular phones and other electronic devices to execute financial transactions through banks, financial institutions, and peer-to-peer mobile payment platforms in furtherance of their drug trafficking.

6.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, reports provided to me by other law enforcement officers, and statements made by witnesses and other concerned parties. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not included each and every fact known to me concerning this investigation.

7.    I am submitting this Affidavit in support of a search warrant authorizing a search for (1) a white iPhone with a cracked screen in a blue case ("**Target Cell Phone 1**"); (2) a blue Android with "AT&T" marked on the back ("**Target Cell Phone 2**"); (3) a black iPhone with a black case ("**Target Cell Phone 3**"); (4) a black Android ("**Target Cell Phone 4**"); (5) a black and blue Motorola Razr ("**Target Cell Phone 5**"); and (6) a blue Android with IMEI: 99017699213423 ("**Target Cell Phone 6**") (collectively, the "**Target Cell Phones**").

8.    The **Target Cell Phones** are currently stored in secure evidence

4

at the DEA Oklahoma City District Office, located at 901 NE 122nd Street, Oklahoma City, Oklahoma 73114, as further described in **Attachment A**, which is incorporated into this Affidavit by reference. I am submitting this Affidavit in support of a search warrant, which would authorize the forensic examination of the **Target Cell Phones** for the purpose of identifying electronically stored data that is particularly described in **Attachment B**, which constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1), 846, and 856(a)(1). The requested warrant would also authorize the seizure of the items and information specified in **Attachment B**.

9.     Based on my training and experience, and the facts set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have been committed by **Willie Junior JEFFERSON, Donte Lamonte PARKER, Eltramane NEAL**, and others. There is also probable cause to search the property described in **Attachment A** for evidence of this crime, as described in **Attachment B**.

10.     Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant. The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience,

5

conversations with other law enforcement officers and witnesses, and review of documents and records.

## PROBABLE CAUSE

11. Law enforcement first became aware of **Willie Junior JEFFERSON** (hereinafter referred to as **JEFFERSON**) and the drug trafficking organization ("DTO") described herein on September 9, 2025, when a source of information (SOI-1)[1] informed agents that **JEFFERSON** was set to receive packages containing methamphetamine through common carriers. SOI-1 gave the tracking numbers to agents, and the agents were able to intercept two packages. After they were intercepted, a certified narcotics detection dog was deployed to conduct a free air sniff regarding the packages. After a positive alert to the odor of narcotics, agents applied for and received a search warrant and discovered approximately 45 pounds of white crystalline substance that tested positive for the presence of methamphetamine. SOI-1 also told agents that they had known **JEFFERSON** to be a narcotics dealer and that **JEFFERSON** operated several stash houses in the Oklahoma City area. Since then, Oklahoma City District Office of the Drug Enforcement Agency (DEA OKC), began an investigation into

---

[1] SOI-1 is not currently on probation or parole. SOI-1 has no convictions involving crimes of dishonesty. SOI-1 is not facing charges and is not being paid for his/her cooperation. Information given to agents by SOI-1 has been independently corroborated and has shown to be true and reliable. I am unaware of any false information provided by SOI-1 to law enforcement in connection with this matter.

this DTO. Through this investigation, DEA has identified **JEFFERSON** as a source of supply (SOS) of methamphetamine, cocaine, and fentanyl in the Oklahoma City area.

12. In late September 2025, the Oklahoma Bureau of Narcotics (OBN) conducted a traffic stop and seizure over 100 grams of methamphetamine from an individual who would become a source of information (SOI-2).[2] SOI-2 began cooperating in the hopes of mitigating their potential charges. SOI-2 informed OBN agents that they got the methamphetamine from 4340 NW 15th St., Oklahoma City, Oklahoma SOI-1 had previously identified this address as a potential stash house that was under the control of **JEFFERSON**. SOI-2 later told OBN agents that they received the methamphetamine from an African American male with dread locks who goes by the nickname "Evil Twin." Agents have identified "Evil Twin" as **JEFFERSON**'s nickname that he identifies himself as on Facebook. Oklahoma Department of Corrections (ODOC) databases also have "Evil Twin" as a known nickname of **JEFFERSON**.

---

[2] SOI-2 has no convictions involving crimes of dishonesty. SOI-2 is not facing charges and is not being paid for his/her cooperation. However, SOI-2 provided information in the hopes of mitigating any potential charges from the traffic stop. Information given to agents by SOI-2 has been independently corroborated and has been shown to be true and reliable. I am unaware of any false information provided by SOI-2 to law enforcement in connection with this manner.

13.    In April 2026, a DEA confidential source (CS-1)[3] communicated with a source of supply (SOS) regarding the distribution of methamphetamine in Oklahoma City, Oklahoma. CS-1 conducted a recorded phone call in the presence of agents via Signal to the telephone number 405-764-7432, a number that CS-1 was given by **JEFFERSON** to contact **JEFFERSON**. Law enforcement later determined that the phone number was actually being utilized by **PARKER**. The SOS agreed to arrange a narcotics transaction for a trafficking amount of methamphetamine to CS-1. The SOS provided a meet time and meet location to facilitate the transaction of methamphetamine.

14.    In April 2026, CS-1 arrived at the predetermined meeting location in Oklahoma City, Oklahoma at the pre-arranged meet time. Agents witnessed CS-1 get out of their vehicle and into **PARKER**'s vehicle to complete the narcotics transaction. Several minutes later, CS-1 exited the **PARKER**'s vehicle and returned to their vehicle. Surveillance was maintained on **PARKER**'s vehicle as **PARKER**'s vehicle departed the meet location.

15.    After the narcotics transaction CS-1 positively identified the voice of

---

[3]    CS-1 is currently working off criminal charges. CS-1 is not currently on probation or parole. CS-1 has no convictions of crimes involving dishonesty. CS-1 has provided law enforcement information on multiple occasions; that information has been independently corroborated and has been shown to be true and reliable.

**PARKER** as the same voice of the person that they talked with on the telephone to organize the narcotics transaction. Law enforcement also showed CS-1 a known photograph of **PARKER**, and CS-1 also positively identified **PARKER**, from a picture of **PARKER**, as the person driving the red Dodge Ram and as the person who gave the narcotics to CS-1.

16.    On May 14, 2026, law enforcement conducted electronic surveillance on **JEFFERSON** and **PARKER**. Based on this surveillance, agents observed **JEFFERSON** and **PARKER** leave their respective residences at approximately the same time and arrive at a residence at 1901 NE 27th Street, Oklahoma City, Oklahoma, (hereinafter the "Residence") within ten minutes of each other.

17.    After **JEFFERSON** and **PARKER** were at the Residence, agents observed a blueish-gray Cadillac arrive at the Residence and park outside. Agents observed **NEAL** exit the Cadillac and enter the Residence.

18.    Approximately forty minutes after **NEAL** entered the residence, agents observed **JEFFERSON**, **PARKER**, and **NEAL** exit the residence at approximately the same time. **PARKER** and **NEAL** were carrying a large black tub with a red lid. The tub appeared to be heavy as both **PARKER** and **NEAL** had to carry it together. **PARKER** and **NEAL** placed the tub in the backseat of the Cadillac. **JEFFERSON** departed the residence while **PARKER** and **NEAL** went back inside.

19.    A little shy of twenty minutes later, **PARKER** and **NEAL** exited the

9

residence. **NEAL** got into the Cadillac and left the residence. The large black tub was still in the vehicle.

20.    After leaving the residence, agents maintained surveillance on the Cadillac until the Oklahoma City Police Department (OCPD) was able to conduct a traffic stop for a traffic violation. Law enforcement identified **NEAL** as the driver and sole occupant of the gray Cadillac. OCPD determined that **NEAL** did not have a valid driver license, and **NEAL** was placed under arrest. **NEAL** provided consent to search the Cadillac. During the course of the consent search officers located approximately 99 pounds of a white crystal-like substance that fielded tested positive for methamphetamine.   The majority of methamphetamine was found inside the same black tub that law enforcement had observed being removed from the Residence and loaded into the vehicle by **NEAL** and **PARKER**. A subsequent examination by the South Central Laboratory for the Drug Enforcement Administration (DEA) revealed that the substance had a net weight of 50.9 kilograms and was positive for methamphetamine. **NEAL** was taken into custody. Agents also located **Target Cell Phone 4**, **Target Cell Phone 5**, and **Target Cell Phone 6** in the vehicle.

21.    Shortly after **NEAL** was taken into custody, agents witnessed **PARKER** leave the Residence and get into a silver Nissan Rogue bearing a temporary license plate. Agents witnessed **PARKER** depart from the Residence in the silver Nissan Rogue. OCPD conducted a traffic stop on the Nissan Rogue

10

and identified **PARKER** as the driver of the Nissan Rogue. There was a female and children in the Nissan Rogue with **PARKER**. OCPD detained **PARKER** while agents executed a search warrant at the Residence. After **PARKER** was detained agents located **Target Cell Phone 1** and **Target Cell Phone 2** on **PARKER**'s person. While **PARKER** was detained agents witnessed a FaceTime call coming through one of **PARKER**'s cell phones from **JEFFERSON**.

22.    While agents were obtaining a search warrant for the Residence agents witnessed **JEFFERSON**, via electronic surveillance, operating a silver Ford F250 bearing OK license plate SIM 319 (registered to third party) driving back into the area of the Residence. **JEFFERSON** then drove to the vehicle stop that was being conducted on **PARKER**. When **JEFFERSON** arrived at the vehicle stop agents conducted a vehicle stop on the silver Ford F250 and identified **JEFFERSON** as the operator of the silver Ford F250. One female was in the silver Ford F250. OCPD detained **JEFFERSON** while agents conducted a search warrant at the Residence.   During a search of **JEFFERSON** officers found a key chain that had a key that was able to open the door at the Residence **JEFFERSON** also had a large amount of U.S. Currency and **Target Cell Phone 3**. Due to **JEFFERSON** only having one cell phone during the time he was arrested agents believe that **Target Cell Phone 3** was the cell phone being utilized to attempt a FaceTime call with **PARKER** after **PARKER** was arrested. Agents also believe that since **JEFFERSON** and **PARKER** have conspired to sell

11

narcotics to CS-1 in the past that **Target Cell Phone 3** is being utilized to further the sell of narcotics.

23.    On May 14, 2026, agents applied for and received a state search warrant for the Residence. Upon execution of the search warrant, agents located approximately 80 pounds of a crystal-like substance that field tested positive for methamphetamine, in plain view, in two different bedrooms within the residence. Agents also observed items of dominion and control in a backpack that were in **PARKER**'s name which was located in one of the bedrooms of the residence where a large amount of the methamphetamine was found.

24.    On May 15, 2026, a Criminal Complaint was filed against **JEFFERSON**, **PARKER**, and **NEAL** in Case Number MJ-26-265-SM. The Criminal Complaint charged all three individuals with a violation of 21 U.S.C. § 846. On June 2, 2026, a federal Indictment was returned against **JEFFERSON**, **PARKER**, and **NEAL** in Case Number CR-26-243-SLP. There are four counts in the federal Indictment. Count One alleges a violation of 21 U.S.C. § 846 against all three defendants. Counts Two and Four both allege a violation of 21 U.S.C. § 841(a)(1) against **JEFFERSON** and **PARKER**. Count Three alleges a violation of 21 U.S.C. § 841(a)(1) against **NEAL**.

## AUTHORIZATION REQUEST

25.    The **Target Cell Phones** have remained in law enforcement custody since May 14, 2026, and are currently stored at the DEA Oklahoma City District

12

Office, located at 901 NE 122nd Street, Oklahoma City, Oklahoma 73114. The **Target Cell Phones** have been stored and secured such that their contents, to the extent material to this investigation, are in substantially the same state as the time that **Target Cell Phones** were seized.

26.     Based on my training and experience, I am aware that individuals involved in trafficking illegal drugs often use cellular phones to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal drugs. Such cellular phones and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of drug-trafficking offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, and videos.

27.     Based on my training and experience, I know that individuals involved in trafficking illegal drugs often take and store photographs of controlled substances and the proceeds of drug sales, and usually take and store these photographs using their cellular phones. I also know from my training and experience that evidence of financial transactions conducted in furtherance of drug trafficking will often be found on a suspect's cellular phone.

28.     Based on my training and experience, I know that electronic devices, such as **Target Cell Phones**, can store information for long periods of time, even years. Similarly, things that have been viewed via the Internet are typically

13

stored for some period of time on the electronic device. This information can sometimes be recovered months or years later using readily available forensic tools. This is true even if the user of the electronic device deleted the file. This is so because when a person "deletes" a file on a computer or electronic device, the data contained in the file does not actually disappear; rather, the data remains on the storage medium until it is overwritten by new data.

29. Based on the above information, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1), 846, and 856(a)(1) have occurred, and that evidence of these offenses is located on the **Target Cell Phones**. Therefore, I respectfully request that this Court issue a search warrant for the **Target Cell Phones**, as described in **Attachment A**, authorizing the seizure of the items described in **Attachment B**.

30. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Target Cell Phones** consistent with the warrant. The examination may require law enforcement to employ techniques including, but not limited to, computer-assisted scans of the entire medium, which might expose many parts of the **Target Cell Phones** to human inspection in order to determine whether it is evidence described by the warrant.

31. Because the warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not

involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Respectfully submitted,

Dakota Norton
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 30 day of August, 2026.

Suzanne Mitchell
United States Magistrate Judge

15

## ATTACHMENT A

The property to be searched is described as:

1.    a white iPhone with a cracked screen in a blue case, with two vertical cameras and one vertical camera (**Target Cell Phone 1**);

2.    a blue Android with "AT&T" on the back, and two vertical camera's (**Target Cell Phone 2**);

3.    a black iPhone with a black case and two vertical cameras (**Target Cell Phone 3**);

4.    a black Android with two vertical cameras and one horizontal camera (**Target Cell Phone 4**);

5.    a blue and black Motorola Razr (**Target Cell Phone 5**); and

6.    a blue Android with IMEI: 990017699213423 (**Target Cell Phone 6**).

The devices (**Target Cell Phone 1, Target Cell Phone 2, Target Cell Phone 3, Target Cell Phone 4, Target Cell Phone 5**, and **Target Cell Phone 6**) are collectively known as **Target Cell Phones.**

The **Target Cell Phones** are currently located in secure evidence storage at the DEA Oklahoma City District Office, located at 901 NE 122nd Street, Oklahoma City, Oklahoma 73114. This warrant authorizes the forensic examination of all **Target Cell Phones** for the purpose of

identifying the electronically stored information described in **Attachment B**.

The **Target Cell Phones** are pictured below.

1. **Target Cell Phone** 1 (a white iPhone with a cracked screen in a blue case, with two vertical cameras and one vertical camera):





2.    **Target Cell Phone 2** (a blue Android with "AT&T" on the back, and two

vertical cameras):





3.    **Target Cell Phone 3** (a black iPhone with a black case and two vertical

cameras):





4.    **Target Cell Phone 4** (a black Android with two vertical cameras and one

horizontal camera





5.    **Target Cell Phone 5** (a blue and black Motorola Razr):





6. **Target Cell Phone 6** (a blue Android with IMEI: 990017699213423):





## ATTACHMENT B

1.  All records on the **Target Cell Phones** described in **Attachment A**, that relate to a violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute and distribution of controlled substances), 21 U.S.C. § 846 (drug conspiracy), and 21 U.S.C. § 856(a)(1) (maintaining a drug-involved premises) involving **Willie JEFFERSON Jr., Donte PARKER, and Eltramane NEAL**, from September 9, 2025, through May 14, 2026, including:

   a.  lists of customers and co-conspirators and related identifying information;

   b.  records of communications and evidence of communications including, but not limited to, call logs, voicemails, text messages (SMS or MMS), instant messages, multimedia messages, emails, and messages sent through applications, between the users of the **Target Cell Phones** and customers and co-conspirators;

   c.  records detailing types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e.  any information recording **JEFFERSON Jr's, PARKER's, or NEAL's** schedule or travel including, but not limited to, location information related to the acquisition or distribution of controlled substances;

   f.  any audio recordings, images, video recordings, or still-captured images on the **Target Cell Phones** related to the purchase, sale, transportation, possession, or distribution of controlled substances, or the collection, transfer, or laundering of drug proceeds;

g.  any records on the **Target Cell Phones** involving **JEFFERSON Jr.**, **PARKER**, or **NEAL** and money, drugs, drug ledgers, drug paraphernalia, vehicles, bedrooms, backpacks, residences, and other individuals believed to be involved in drug trafficking; and

h.  all bank records, checks, credit card bills, account information, and other financial records.

2.  Evidence of user attribution showing who used or owned the **Target Cell Phones** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history. This includes records of Internet Protocol addresses used and records of Internet activity, including firewall logs, caches, browser history, cookies, "bookmarked" or "favorited" web pages, search terms, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.